UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WENDY FENCL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 9102 |
| | ) | |
| HEIDRICK AND STRUGGLES and | ) | |
| KARLEEN MUSSMAN, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendant Karleen Mussman ("Mussman") to dismiss Count II of Plaintiff Wendy Fencl's ("Fencl") complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below, the motion to dismiss Count II is granted without prejudice. Fencl is given seven (7) days to amend her complaint consistent with this order.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Fencl's complaint are accepted as true. The Court draws all reasonable inferences in favor of Fencl. According to the allegations contained in the complaint,

1

Fencl is fifty-five years old. She is a resident of Willowbrook, Illinois. Defendant Heidrick and Struggles International Inc. ("Heidrick") is an executive search firm that is incorporated in Delaware and does business in Chicago, Illinois. Mussman is a resident of Oak Park, Illinois. Fencl claims Mussman is in her forties. Heidrick employed Fencl around June 1, 2011 as an External Consultant. In 2012, Heidrick hired Fencl full-time as its Global Director of Talent Management. Fencl alleges that she earned consistent positive performance reviews during her employment with Heidrick.

In late April or May 2013, Heidrick hired Mussman, as its Senior Vice President of Human Resources. Around July 2013, Judy Braun ("Braun"), Vice President of Talent Development and Fencl's direct supervisor, separated from Heidrick. For approximately five months following Braun's departure, Hencl performed Braun's job responsibilities while Heidrick searched for a permanent replacement for Braun's role. Mussman would give Fencl compliments on her performance in Braun's role and thanked her for ensuring that the department continued to function smoothly.

During this time, on five separate occasions, Fencl asked Mussman, who was in charge of hiring Braun's replacement, to consider Fencl for promotion to the permanent Vice President of Talent Development position. In fact, prior to Mussman joining Heidrick, Fencl claims that Heidrick had identified Fencl as Braun's successor

for this position in its formal succession plan.  Despite Fencl's repeated requests, Mussman refused to consider her for the role.  Instead, around December 2013, Mussman hired Jill Attkisson ("Attkisson") for the position, a woman fifteen years younger than Fencl.  Fencl alleges that Attikisson had far less professional experiences and qualifications than her.

Soon thereafter, Fencl asked Mussman about why she was not considered for the promotion to Vice President of Talent Development.  Mussman allegedly became angry and first responded by pretending not to know Fencl was interested in the position.  Then, Mussman supposedly started to accuse Fencl of not being sufficiently "aggressive" in pursuing the position.  Mussman subsequently required Fencl to train Attkisson for the role.  On February 7, 2014, Mussman terminated Fencl's employment with Heidrick because Mussman was allegedly still upset with Fencl for questioning her hiring decision.

When terminating Fencl's employment, Mussman allegedly told Fencl that she had decided to take "the training department in a new direction" and that she was "eliminating" Fencl's position.  However, Fencl claims that a month and a half prior to her termination, Heidrick had publically posted Fencl's Global Director of Talent Development position for hire.  Fencl alleges that after her termination, Heidrick had not taken the training department in a new direction or changed any of the programs in place at the time of Fencl's employment.

On April 1, 2014, Fencl filed a charge with the Equal Employment Opportunity Commission (the "EEOC") alleging age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"). At the EEOC, Fencl alleges that Heidrick changed its story, and instead claimed to have terminated her for performance problems. On October 27, 2014, Fencl received her Notice of Right to Sue from the EEOC.

On November 13, 2014, Fencl filed a two-count complaint, asserting: one claim for age discrimination in violation of the ADEA against Heidrick (Count I); and a state law claim for intentional interference with employment/prospective economic advantage ("tortious interference") against Mussman (Count II).

On January 12, 2015, Mussman moved to dismiss Count II of Fencl's complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6).

## LEGAL STANDARDS

I.  **Rule 12(b)(1)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. "The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion." *Bolden v. Wells Fargo Bank, N.A.*, 2014 WL 6461690, at *2 (N.D. Ill. Nov. 18, 2014) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009)). "If a defendant challenges the

sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiffs favor." *Bolden*, 2014 WL 6461690, at *2 (citing *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003)). A factual challenge to the court's subject matter jurisdiction, on the other hand, is based on the assertion that "the complaint is formally sufficient but ... there is *in fact* no subject matter jurisdiction." *United Phosphorus*, 322 F.3d at 946 (emphasis in original). When considering a factual challenge to the court's jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007)). "Where jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raised the jurisdictional challenge." *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008).

## II. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise her right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must allow the court to draw the reasonable inference that the defendant is liable for the purported misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Id.* at 678. The claims must be described "in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *EEOC v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

**I. Dismissal Under Rule 12(b)(6)**

In Count II, Fencl alleges a common law claim of tortious interference. To establish a tortious interference claim, Fencl must show: (1) her reasonable expectation of a valid continuing business relationship; (2) that Mussman knew of the expectancy; (3) that Mussman purposefully prevented the expectancy from ripening; and (4) resulting damages. *See Filson v. Big Ten Conference*, 06 C 3839, 2006 WL 3626707, at *5 (N.D. Ill. Dec. 11, 2006) (citing *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005)). When the actions of a third party cause an employer to decide to fire

an at-will employee, the third party might be liable in tort. *Ali v. Shaw*, 481 F.3d 942, 945 (7th Cir. 2007). "A plaintiff states a cause of action only if [she] alleges a business expectancy with a specific third party as well as action by the defendant directed towards that third party." *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 356 Ill. App. 3d. 1010, 1020 (1st Dist. 2005). Such a tortious interference claim can arise out of an employment relationship where "the defendant's action is without justification." *Adams v. Catrambone*, 359 F.3d 858, 865 (7th Cir. 2004).

The defendant in *Caffarello v. Illinois State Toll Highway Auth.*, 2014 WL 3559388, at *9 (N.D. Ill. July 17, 2014) asserted the same argument Mussman provides in her motion to dismiss: Fencl's claim fails because she has not alleged a business expectation with a third party. However, the court in *Caffarello* discussed *Mittelman v. Witous*, 135 Ill. 2d 220, 142 Ill. Dec. 232 (1989), *abrogated on other grounds*, *Kuwik v. Starmark*, 156 Ill. 2d 16, 619 N.E. 2d 129 (1993) and dismissed the plaintiff's tortious interference claim because he did not allege that his supervisor was acting solely for his own gain when he terminated the plaintiff's employment. In fact, the plaintiff in *Caffarello* pleaded himself out of court by stating that his supervisor had the authority for all employment decisions, not the company. The court rejected the defendant's third party argument, stating that "in the broadest sense, tortious interference by a supervisor is actionable if he acted on his own behalf and not in the company's interest." *Caffarello*, 2014 WL 3559388, at *9 (citing *Maddie v. Siebel Sys., Inc.*, 04 C 3419, 2004 WL 2515827, at *4 (N.D. Ill. Nov. 5, 2004); *see also Ali*,

481 F.3d at 945 (holding "in the corporate world, officers enjoy immunity from these types of claims provided that they work the action in pursuit of the legitimate interests of the company."). Fencl must allege that Mussman took "action…directed towards the party with whom the plaintiff expects to do business." *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1039 (1998); *see also OnTap Preminum Quality Waters, Inc. v. Bank of N. Ill., N.A.*, 262 Ill. App. 3d 254, 263 (1994) (dismissing a complaint of tortious interference that was "devoid of any allegation that defendant directed any action which purposefully cause the [third party] not to enter into a business relationship with plaintiff.").

To support Fencl's contention that Mussman was motivated by a personal animus, without intent to further Heidrick's interests, she alleges that when she told Mussman that she was disappointed for not being considered for the position and questioned Mussman as to why, Mussman allegedly became angry and responded by first pretending not to know that Fencl was interested in the position and then accusing her of not being "aggressive" enough in pursuing it. Two weeks later, Heidrick posted Fencl's position for hire and then less than two months later, Heidrick terminated Fencl. Further, Fencl claims that Mussman's reasoning for Fencl's termination was false because Heidrick has not yet taken the training department in a "new direction" or changed any of the programs in place at the time of Fencl's employment. In fact, Fencl alleges that at the EEOC, Heidrick changed its story and now claimed that it terminated Fencl based on performance problems, even though

8

Fencl claims that she earned consistent positive performance reviews during her employment with Heidrick. These allegations, together, create a reasonable inference that Mussman terminated Fencl unrelated to the legitimate interests of Heidrick.

Overall, Fencl has alleged that Mussman "intentionally, willfully, and without justification interfered with Plaintiff's employment and solely for her own benefit and/or to injure Plaintiff" and Mussman "exercised this interference in her own personal interest and not in the interest of Defendant Heidrick." Nothing in the complaint indicates that Mussman was solely responsible for all employment decisions or had full control and authority over Fencl's position. For example, Fencl states that Heidrick "searched for a permanent replacement for [Braun's] role" and that "Mussman hired Attkisson for the position." Therefore, at this present posture and drawing all inferences in favor of Fencl, we surmise that there was some type of communication from Mussman to management at Heidrick about who would replace Braun, either directly or indirectly, which ultimately controlled Fencl's relationship with Heidrick. Discovery will reveal the amount of control Mussman had in the decision-making process and whether Heidrick relied on Mussman's alleged misrepresentations about Fencl, but such information is not necessary at this early pleading stage.

**II. Dismissal Under Rule 12(b)(1)**

Mussman argues that tortious interference claim is inextricably linked to her age discrimination claim and must be dismissed under Rule 12(b)(1) because it is preempted by the Illinois Human Rights Act (the "IHRA"). The IHRA gives the Illinois Human Rights Commission exclusive jurisdiction over civil-rights violations. 775 ILCS 5/8-111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). Employment discrimination is defined in the Act as incidents involving "promotion, renewal of employment . . . discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." *Id*. 5/2-102(A).

The IHRA preempts common law tort claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Johnson v. Chicago Bd. Of Educ.*, 00 C 1800, 2002 WL 1769976, at *4 (N.D. Ill. Aug 1, 2002) (citation omitted). The Illinois Supreme Court has reminded us that framing a claim in terms of a tort does not "alter the fundamental nature of [a] cause of action." *Geise v. Phoenix Co. v. Chicago, Inc.*, 159 Ill.2d 507, 518 (1994). The critical issue is whether Fencl's tortious interference claim can stand without relying on allegations that constitute an IHRA violation.

Fencl contends that Mussman was motivated by a personal animus, not for discriminatory reasons, and that the IHRA does not apply. To support her tortious interference claim, Fencl claims that she pleaded facts separate and apart from her age discrimination claim. Indeed, the Court acknowledges that Fencl recites the elements of tortious interference as allegations under Count II, including her reasonable expectation of continuing her employment with Heidrick and Mussman's knowledge of this expectation, but she also provides additional factual allegations to support her tortious interference claim, as stated above in Part I, *supra*.

Mussman argues that Fencl must allege more about Mussman terminating Fencl for personal gain, or for the purpose of harming Fencl to satisfy the pleading requirements. We disagree—the facts establish that Mussman's personal motive for terminating Fencl's employment stemmed from Fencl questioning Mussman's authority and decision-making abilities. Mussman's alleged anger is what motivated her to terminate Fencl. Fencl states that Mussman interfered with her employment "solely for her own benefit and/or to injure Plaintiff." Nothing in the complaint indicates that Fencl questioned Mussman's decision to not choose her for the position because of Fencl's age or based on age discrimination. The independent basis is Fencl questioning Mussman's decision-making, and Mussman's anger that Fencl inquired about it.

However, the Court takes issue with how Fencl incorporates prior paragraphs as reference. In Paragraph 28 of her complaint, she "incorporates by reference the preceding paragraphs as though fully set forth in this Count II," which technically includes the allegations of age discrimination in Count I. Mussman claims that the inclusion of the paragraphs in Count I "clearly indicates that [Fencl] believes and is alleging that Ms. Mussman was motivated *by age* in making her termination decision." The Court does not agree with Mussman[1]. We will permit Fencl to amend her complaint to remove the paragraphs in Count I from her tortious interference claim. The Court grants Mussman's motion to dismiss Count II without prejudice and gives Fencl leave to amend her allegations in Count II.

## CONCLUSION

For the aforementioned reasons, the Court grants Mussman's motion to dismiss Count II without prejudice. Fencl is given seven (7) days to amend her complaint consistent with this order.

_____
**Charles P. Kocoras**
**Date: 3/11/2015**                      **United States District Court Judge**

---

[1] The Court is also perturbed with Mussman stringing two very separate allegations from the exhibit attached to Fencl's charge of discrimination with the EEOC in attempt to persuade the Court that Fencl alleged Mussman failed to promote her based on her age. *See* Mussman's Reply, p. 13.